UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAVON MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 16 C 5056 |
| | ) |
| SHELLIA PORTWOOD, et al. | ) |
| | ) |
| | ) Hon. Rebecca R. Pallmeyer |
| | ) Judge Presiding |
| Defendants. | ) |

## AMENDED COMPLAINT

Plaintiff, LaVon Moore, by and through his attorney, files this amended complaint pursuant to Federal Rules of Civil Procedure 15(a) and alleges as follows:

## PRELIMINARY STATEMENT

1. This lawsuit arises out of serious bodily burns suffered by LaVon Moore, a former detainee at the Statesville Prison, when he was made to work under dangerous and unsafe conditions. Rather than abide by their obligations and responsibilities to provide safe working conditions, defendants deliberately disregarded the serious harm that the obviously unsafe working conditions posed to Plaintiff, and violated his federal and constitutional rights.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. Section 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and 1343(a).

3. Venue is proper under 28 U.S.C. § 1391(b) and (c). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within this district.

## PARTIES

4. Plaintiff LaVon Moore is a 22-year old resident at Cook County Illinois.

5. At the time of the events at issue in this case, Mr. Moore was a prisoner at Shawnee Correctional Center but stationed to work at the Northern Reception and Classification Center at Stateville Correctional Center ("NRC").

6. Defendant Shellia Portwood was, at all times relevant herein, a Corrections Food Service Supervisor at Stateville Correctional Center. She is sued in her individual capacity.

7. Defendant Nadine Lockett was, at all times relevant herein, a Head Corrections Food Service Supervisor at Stateville Correctional Center. She is sued in her individual capacity.

8. All mentioned defendants were acting within the scope of their employment at the time of the incident giving rise to the causes of action.

9. All defendants have acted and continue to act under the color of law in the State of Illinois at all times relevant to this complaint. Their deprivations of Plaintiff's constitutional rights are set forth in the following statements of facts and causes of action.

## STATEMENT OF FACTS

10. Plaintiff was a prisoner at Shawnee Correctional Center at Vienna, Illinois.

11. Plaintiff was stationed to work at Northern Reception and Classification Center at Stateville Correction ("NRC"). Plaintiff was originally assigned to work in the food preparation line at the NRC's kitchen.

12. Plaintiff worked under the control and supervision of his supervisors Shellia Portwood ("Portwood") and Nadine Lockett ("Lockett").

13. Portwood was a government official who carried a badge of authority and was entrusted with the powers of the State of Illinois to supervise food and kitchen services at NRC.

14. Lockett was also a government official who carried a badge of authority and was entrusted with the powers of the State of Illinois to supervise food and kitchen services at NRC.

15. Food and kitchen supervision services at NRC are important public functions of the State of Illinois that were delegated to Portwood and Lockett.

16. Portwood and Lockett were in-charge of the overall supervision of the kitchen and food preparation and were both intimately knowledgeable about all the conditions surrounding food preparation and dish washing that inmates are assigned to work.

17. On or about May 9, 2015, the hot water faucet at the kitchen sink where dishes are washed were not working. Inmates assigned to do dish washing usually had to use the hot water from a different place and carry it over to the kitchen sink.

18. A tilt skillet positioned several feet away from the kitchen sink dish washing area was the alternative source of hot water. The tilt skillet contained several gallons of hot boiling water.

19. On May 9, 2015 Portwood gave a direct order to Plaintiff that he was to stop his work at Dietary Food-Prep and begin work at Dietary Kitchen dishwashing area. Portwood instructed Plaintiff that going forward washing pots and pans was going to be his work at NRC.

20. On May 9, 2015, Portwood informed Plaintiff that there is no hot water at the sink where he will be washing pots and pans because the faucet was not working.

21. On May 9, 2015, Portwood instructed Plaintiff on where to get hot water to do his assigned worked. Portwood told Plaintiff that he would have to fill two pots with hot boiling water from a tilt skillet, place the pot of hot water on a flat cart, carry it back to the dishwashing station, and pour the hot boiling water into the sink. Portwood was aware of the substantial risk of serious harm that such a task posed to Plaintiff.

22. On May 9, 2015, Plaintiff asked Portwood if she could give him protective rubber gloves so he would not burn himself while fetching hot water from the tilt skillet, carrying it to the kitchen sink, lifting the pots from the cart and pouring it into the sink for dish washing. Portwood responded to Plaintiff in a stern voice by saying "there aren't any," and walked away. Portwood was deliberately indifferent to the safety of Plaintiff and disregarded the condition posing a substantial risk of serious harm to Plaintiff by not making any effort to provide safety gloves for the job.

23. On May 10, 2015 at about 9.40 AM Plaintiff reported to his assigned work place at NRC to perform the work as ordered. This time Lockett was the supervising official with a badge of authority that Plaintiff encountered.

24. Plaintiff asked Lockett for permission to put on work uniform and Lockett granted him the permission. Lockett, as a senior supervisor, knew about the dangerous condition that was posed by the fetching of hot boing water from the tilt skillet several feet away and bringing it back to the kitchen sink to wash dishes without the use of proper safety gloves to carry to pot of hot boiling water.

25. Locket knew Plaintiff did not have any protective gloves and she did not provide any protective gloves. Lockett did not take any steps to provide Plaintiff with safety or protective gloves to cover his hands while performing the obviously dangerous task. All that Lockett did was to simply ignore the substantial risk of serious harm that Plaintiff faced without the use of protective hand gloves, and sat at her supervisory workstation with no concern about the safety of Plaintiff.

26. Plaintiff had no other choice but to use a steel wool ("brillo pad") and a small hand towel to protect his hands to fetch, transport and pour the hot boiling water into the kitchen sink.

27. Plaintiff went and filled two pots with hot water from the tilt skillet and transported it back to the kitchen to be poured into the sink.

28. While attempting to lift one of the pots filled with hot boiling water to pour into the sink, he felt the intensity of the heat in his hands. The small hand towel and brillo pad was not sufficient to insulate his hand from the intense heat. The intensity of the heat caused him to lose grip of the pot and it slipped off the edge of the sink, and the hot boiling water splashed back onto his face and chest, burning him severely. Plaintiff felt an intense burning sensation on his face. He tried to wipe his face and saw that his skin was peeling off his face and fell under shock.

29. Plaintiff regained his composition and rushed to the supervisor's work station where Lockett was sitting and laughing with his co-workers and informed her of what had happened.

30. The guards at the NRC rushed Plaintiff to the Presence Saint Joseph Medical Center at Joliet, Illinois for treatment of facial and chest burns.

31. On May 12, 2015, Plaintiff filed an Illinois Department of Corrections Offender's Grievance complaining of the dangerous conditions under which he was compelled to work and

ultimately suffered serious bodily burns. However, Plaintiff received neither a response nor an acknowledgement from the Jail administration.

32. On January 15, 2016, Plaintiff wrote to the Administrative Review Board to seek a response and resolution to his complaint.

33. On February 2, 2016, the Administrative Review Board at the Illinois Department of Corrections indicated that the issue complained of by Plaintiff will not be addressed any further because there has not been a response from the facility for over sixty days.

## COUNT I
### Section 1983 Claim Against Defendants Portwood and Lockett for Deliberate Indifference

34. The allegations of paragraphs 1 through 33 are incorporated herein by reference.

35. As described above, Defendants Portwood and Lockett were aware that the conditions under which Plaintiff had to work were dangerous, failed to ensure that Petitioner was provided with a work environment that did not pose substantial risk of serious harm, and also failed to provide Plaintiff with safety gloves to minimize the risk of harm.

36. The actions of both Portwood and Lockett exhibited deliberate indifference to the substantial risk of serious harm, were performed under color of state law, and violated Petitioner's rights under the Eight Amendment to the United States Constitution.

37. As a direct and proximate result of the actions of Defendants Portwood and Lockett in deliberately disregarding the risk of serious harm Plaintiff was subjected by not providing him with protective gloves while performing extremely dangerous work, Plaintiff suffered serious burns to his face and body and had his federally secured rights violated. Accordingly, these defendants are liable to Petitioner under 42 U.S.C. § 1983.

WHEREFORE Petitioner requests that this Court grant him the following relief, jointly and severally against the named defendants:

    A.    judgment for compensatory damages against all defendants in an amount to be determined at trial;

    B.    judgment for punitive damages against all defendants in an amount to be determined at trial;

    C.    an award of the costs of this action against all defendants, including reasonable attorney's fees.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

DATED: January 18, 2017

Respectfully submitted,

LaVon Moore

By: /s/Joe H Prempeh
One of his attorneys

Joe H Prempeh
Prempeh Law Firm
5478 W. Higgins Ave, Ste. 3W
Chicago, Illinois 60630
Tel: (872) 222-5031